UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| FRANK BAILEY | * | CIVIL ACTION |
|---|---|---|
| VERSUS | * | NO: 06-0014 |
| SHERIFF HARRY LEE, ET AL | * | SECTION: "D"(4) |

## ORDER AND REASONS

Before the court is the **"Third Motion for Summary Judgment"** **(Doc. No. 61)** filed by Defendants, Harry Lee and Glen Jambon. Plaintiff, Frank Bailey, filed a memorandum in opposition. The motion, set for hearing on Wednesday, June 4, 2008, is before the court on briefs, without oral argument. Now, having considered the memoranda of counsel, the record, and the applicable law, the court finds that the motions should be granted because (as discussed below) there is no genuine issue of material fact and Defendants are entitled to Judgment as a matter of law.

The court also re-visits, *sua sponte*, its denial of the **"Rule 12(b)(6) Motion to Dismiss" (Doc. No. 56)** filed by Defendant, Jefferson Parish. (*See* Order and Reasons, Doc. No. 62).

## I.  Background

In this matter, Plaintiff alleges that "[o]n or about December 31, 2004, at approximately 9:30 a.m." while he was in custody at the Jefferson Parish Correctional Center, he "walked to the shower on tier 3BL of the Jefferson Parish Correctional Center" and "[a]s he approached the opening area immediately in front of the shower, [he] slipped and fell in spilled water seeping from an over running clogged toilet and sink on the tier." (Complaint at ¶¶14-15).[1]  Plaintiff claims that he struck his shoulder on the "protruding corner's edge of the wall of the shower enclosure" and the "impact of the fall caused excruciating pain and swelling in the areas of [his] shoulder, collarbone, and neck." (*Id.* at 16-17).

Plaintiff further alleges that he "informed the Deputy what had happened and advised him to request for medical assistance" and "[a]pproximately **two hours** after the accident, [he] was escorted to the prison's medical department by Deputy Sylvester, and consulted with an attending nurse, Nurse Jane Doe." (*Id.* at ¶¶18-19, emphasis added).

Further, according to Plaintiff,

> Nurse Jane Doe, ignored the severity of [his] injury, issued two Motrin pills for pain, told

---

[1]     Plaintiff filed his original Complaint on January 3, 2006.

him that she would inform the doctor, and sent
[him] back to his living quarters.

For five days, [Plaintiff] repeatedly
complained of the severe pain from which he
was suffering, only to be deliberately ignored
by defendants. In particular, [Plaintiff]
repeatedly and clearly complained of the
specific intense pain of a fractured
collarbone and two bulging discs in his back.

Finally, **five days** after his injury, on
January 5, 2005, [Plaintiff] was taken to the
Medical Center of New Orleans [known as
Charity Hospital] where he was diagnosed as
suffering from a fractured collarbone.

The accident was later investigated by Deputy
Ancar. During this investigation, [Plaintiff]
explained to Deputy Ancar how and where the
accident happened, and that he was still
experiencing substantial pain from his
injuries.

(*Id.* at ¶¶20-23, emphasis added).

Plaintiff named the following Defendants in his original

Complaint: **Sheriff Harry Lee**, the Sheriff of Jefferson Parish,

sued in his official capacity;[2] **Glen Jambon**, the Warden of the

Jefferson Parish Correctional Center, sued in his individual and

official capacities; and **Nurse Jane Doe**, allegedly an employee of

the Jefferson Parish Correctional Center and "responsible for

receiving inmate complaint and/or requests, triaging medical

requests and referring inmates for evaluation as appropriate."

---

[2]     Sheriff Harry Lee is now deceased and a new sheriff has been elected as Sheriff of Jefferson Parish.

(*Id.* at ¶¶10-12).  Nurse Jane Doe is sued in her individual and official capacities.

Plaintiff seeks damages, claiming that Defendants are liable under 42 U.S.C. §1983, and Louisiana state law for negligence and/or gross negligence.  (*Id.* at ¶¶29-52).

In their Answer to Plaintiff's original Complaint, Defendants Lee and Jambon averred in part that "Defendant Lee does not employ individuals, including nurses, who work in the Medical Facility at the Jefferson Parish Correctional Center [JPCC]."  (*See* Answer, Doc. No. 7, Ninth Defense and ¶XII).  Further, in subsequent motion practice, these Defendants consistently maintained that Sheriff Lee does not employ medical personnel at the JPCC and that the prison inmates' medical care is provided by the Parish of Jefferson by contract with the Sheriff's Office.  (*See* Defendants' Memo. in Support of Rule 12(b)(6) Motion to Dismiss, Doc. No. 12-2, at p. 1, n. 1; Defendants' Memo. in Support of first Motion for Summary Judgment, Doc. No. 35-2, at p. 4, n. 1; and Defendants' Memo. in Support of second Motion for Summary Judgment, Doc. No. 45-2, p. 2 & n. 1).

On June 5, 2007, Plaintiff filed an unopposed Motion for Leave to Supplement and Amend the Original Complaint, which this court granted.  (Docs. Nos. 28 & 29).  In his Amended Complaint, Plaintiff adds the **Parish of Jefferson** as a Defendant and

reiterates all allegations of the original Complaint. Plaintiff alleges that the Parish of Jefferson "is the owner and or operator for the Medical Facility at the Jefferson Parish Correctional Center and is responsible to ensure that inmates receive proper medical care." ("Amended Petition," Doc. No. 30). The Parish of Jefferson answered Plaintiff's Amended Complaint, asserting ceratin defenses and denying liability. (Doc. No. 42).

In support of their Third Motion for Summary Judgment (now before the court), Defendants Lee and Jambon have attached, *inter alia*, as an exhibit the **"Professional Medical Services Agreement By and Between the Parish of Jefferson and Jefferson Community Correctional Medical Program, L.L.C. [referred to as Provider]"** **(Agreement)**, which establishes the responsibilities of the parties operating the medical program at the Jefferson Parish Correctional Center (JPCC). (*See* Ex. D-8 attached to Defendants' Memo. in Support of Third Motion for Summary Judgment).

According to this **Agreement**, the Parish engaged Provider as an independent contractor to render primary health care services to the inmates at the JPCC. All personnel who provide medical services under this contract are considered employees of the Provider and not employees or statutory employee of the Parish. (*Id.* at p. 8). The **Agreement** further provides that: "The

professional and technical adequacy and accuracy of medical services, and other work products furnished under this Agreement, will be conducted in a manner consistent with the level of care and skill ordinarily exercised by members of the medical profession." (*Id*. at 9). However, Provider is not responsible for "any transportation of inmates, including but not limited to ambulance runs." (*Id*. at 6).

Under the **Agreement**, Provider is required to "secure and maintain such insurance that will protect itself, and the Parish, ... from claims for bodily injury, death or property damage which may arise from the performance of services under this Agreement." (*Id*. at 14). Further, "[t]he insurers of Jefferson Community Correctional Center Medical Program, L.L.C. will have no right of recovery or subrogation against th Parish of Jefferson., it being the intention of the parties that the insurance policy so affected shall protect both parties ...." (*Id*. at 14-15).

The Provider is also required to "secure primary, professional liability insurance/medical malpractice insurance ... covering *PROVIDER* and any *PERSONNEL* eligible for such insurance coverage by virtue of their status as a "health care provider" .... (*Id*. at 18). However,

> [i]n the event any claim, demand, lawsuit or
> administrative proceeding is made or commenced
> against *PROVIDER* or its *PERSONNEL*, for which

6

> the [required] insurance ... does not provide
> coverage, including, but not limited to any
> proceeding against *PROVIDER* or its *PERSONNEL*
> for alleged violation of Federal Civil Rights,
> 28 U.S.C. Section 1983, *et seq.*, or other
> laws, the PARISH shall defend, indemnify, hold
> harmless and protect *PROVIDER* and *PERSONNEL*
> for such claims and *PARISH* specifically agrees
> to indemnify *PROVIDER* and *PERSONNEL* for any
> attorney's fees incurred in connection with
> such claims or provide *PROVIDER* and *PERSONNEL*
> with legal representation.

(*Id.* at 20-21).

The dates for amending pleadings and discovery in this matter have long passed,[3] and Plaintiff has not named the Jefferson Community Correctional Center Medical Program, L.L.C.   Further, Plaintiff has failed to identify Nurse Jane Doe and substitute a named party for Nurse Jane Doe.

## II.  Legal Analysis

### A.  Defendants' First Motion for Summary Judgment (Doc. No. 35) and Dismissal of Certain §1983 Claims Against Defendants Lee and Jambon

In ruling on Defendants' first Motion for Summary Judgment, the court found that there was no competent evidence to support Plaintiff's **Monell**[4] claims against Sheriff Harry Lee and Warden

---

[3]    The Trial of this matter has been set **three times** (previously on May 21, 2007and  January 7, 2008, and presently on July 21, 2008).  Pursuant to the **last** Scheduling Order entered, amendments to pleadings had to be filed no later than January 17, 2008, and discovery had to be completed by May 19, 2008.  (*See* Order, Doc. No. 54, p. 2).

[4]    *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Jambon, and thus these Defendants were entitled to summary judgment dismissal of these claims.[5]  (*See* Order and Reasons, Doc. No. 39).

---

[5]     In his deposition, Plaintiff testified:

Q.      Mr. Bailey, you understand that under the law there's what' called certain Monel (*sic*) claims, which in the law is that the policies and procedures of the sheriff and his personal involvement caused your injury.  You don't believe that it was a policy for them not to fix the shower, right?

A.      Right.

Q.      So therefore you have no objection if we release the sheriff under that aspect of the claim?

A.      So that means not involving him?

Q.      Not involving him –

A.      Specifically?

Q.      – specifically or involving a procedure or policy that he said I'm not going to fix any of the showers in this jail so that ya'll can fall and hurt yourselves?

A.      I understand.

[Defendants' counsel]:

        So that claim's out?

[Plaintiff's counsel]:

        That's correct.

[Defendants' counsel]:

        Is that same claim out as pertain (*sic*) ... Jambon?

[Plaintiff's counsel]:

        I would think so.  You understand what he's saying is that whether ... Jambon had a policy not to fix things as opposed to they just didn't respond to you or they just didn't fix it.

[Plaintiff]:

The court now clarifies that these <u>dismissed</u> *Monell* claims were those related to any alleged policy of **inadequate prison conditions** or practice of deliberate indifference to the **need for maintenance repairs at the JPCC**. Plaintiff's §1983 claims of deliberate indifference to **medical needs** were <u>not</u> dismissed in the court's ruling on Defendants' First Motion for Summary Judgment.

**B. Defendants' Second Motion for Summary Judgment (Doc. No. 45)**

The court denied Defendants' Second Motion for Summary Judgment without prejudice. (*See* Order and Reasons, Doc. No. 53, entered on 11/21/07). The court instructed the parties to obtain Plaintiff's complete medical records and Jefferson Parish Correctional Center (JPCC) records, and the court instructed

---

Well, they didn't respond.

[Plaintiff's counsel]:

Right, That's what we're claiming, we're not claiming that there's an actual policy not to fix the shower.

[Plaintiff]:

Correct.

Q.      [Y]ou never complained to ... Jambon about the shower itself?

A.      No ...

(*See* Plaintiff's Deposition (at pages 49-51) attached to Defendants' first Motion for Summary Judgment, Doc. No. 35).

9

Plaintiff to obtain competent evidence (if any) that establishes the contractual relationship between the Sheriff and the Parish of Jefferson for medical care of prisoners at the JPCC. (*Id*. at p. 2). As previously discussed herein, Defendants have now produced an **"Agreement By and Between the Parish of Jefferson and Jefferson Community Correctional Medical Program, L.L.C."** for medical services at the JPCC. No party has submitted evidence of any contractual relationship between the Sheriff and the Parish of Jefferson for medical services.

**C. Defendants' Third Motion for Summary Judgment (Doc. No. 61)**

> ### *(1) Plaintiff's §1983 claims of deliberate indifference to medical needs asserted against Defendants Lee and Jambon*

In their third motion for summary judgment (now before the court), Defendants Lee and Jambon seek dismissal of Plaintiff's remaining §1983 claims asserted against them. Such claims include a claim that Defendants Lee and Jambon were deliberately indifferent to Plaintiff's **medical needs**; that Defendants Lee and Jambon had a policy or custom of inadequately administering **medical care and medication** to inmates; that Defendants Lee and Jambon had a policy or custom of providing inadequate **medical staffing**; and that Defendants Lee and Jambon inadequately trained and supervised

10

deputies and medical personnel who were known to have engaged in deliberate indifference to the **medical needs** of inmates.

Defendants submit the following summary judgment evidence in support of this motion: Plaintiff's deposition transcript;[6] Plaintiff's responses to discovery;[7] Affidavits of Sheriff Deputies Killett and Calvin LeBlanc, who were the deputies who transported Plaintiff to and from Charity Hospital on January 25, 2005;[8] Plaintiff's records (including medicals) while incarcerated at the JPCC;[9] and the Agreement between the Parish of Jefferson and the Jefferson Community Correctional Center Medical Program, L.L.C.[10]

---

[6]      *See* Ex. D-1, attached to Defendants' Memorandum in Support of their first Motion for Summary Judgment (Docs. Nos. 35 & 35-2).

[7]      *See* Ex. D-2, attached to Defendants' Memorandum in Support of their first Motion for Summary Judgment (Docs. Nos. 35 & 35-2).

[8]      *See* Ex. D-4 & Ex. D-5, attached to Defendants' Memorandum in Support of their second Motion for Summary Judgment (Docs. Nos. 45 & 45-2).

[9]      *See* Ex. D-3, attached to Defendants' Memorandum in Support of their second Motion for Summary Judgment (Docs. Nos. 45 & 45-2); and Ex. D-7, attached to Defendants' Memorandum in Support of their third Motion for Summary Judgment (Docs. Nos. 61 & 61-3).

In their memorandum in support of their Third Motion for Summary Judgment, counsel for Defendants represents that he has submitted "all available medical and other records concerning the plaintiff during his period of incarceration at the [JPCC]" and he notes that "a great many such records, particularly those of Charity Hospital, were lost, destroyed or otherwise made unavailable as a result of Hurricane Katrina."  (Doc. No. 51-3, p. 1, n. 1).

In reviewing the records submitted by Defendants, the court finds that the records reflect that in addition to having documented "Physician Sick Call[s]" and receiving medications on dates relative to the Plaintiff's alleged accident, Plaintiff (while incarcerated at the JPCC) had numerous other "Physician Sick Call[s]" dating back to March 2003 and he received numerous and various other medications starting in June 2003.

[10]      *See* Ex. D-8, attached to Defendants' Memorandum in Support of their third Motion for Summary Judgment (Docs. Nos. 61 & 61-3).

(discussed above).[11]

The court finds that Defendants have satisfied their initial burden of identifying those portions of the record which they believe demonstrate the absence of evidence to support Plaintiff's claims that either Sheriff Lee or Warden Jambon developed and maintained any policy or custom exhibiting deliberate indifference to the **medical needs** of prisoners at the JPCC, either through inadequate medical staffing at the JPCC, inadequate medical treatment of prisoners at the JPCC, inadequate training of deputies or correctional staff, or delay of inmates' access to medical care. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 266 (1986).  Thus, the burden shifted to the Plaintiff to designate "specific facts showing that there is a genuine issue for trial."  *Id.*, 106 S.Ct. at 2553.

However, after ample time for discovery, Plaintiff has failed "to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial."  *Id.*, 106 S.Ct. at 2552.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element

---

[11]    Defendants also submitted the Affidavit of Louis Ancar, and his attached investigation report, in support of their motions for summary judgment. (*See* Ex. D-6, Doc. No. 49-2).  However, while this Affidavit is signed and dated, it is not notarized.

of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

Based on the **Agreement** between the Parish of Jefferson and the Jefferson Community Correctional Center Medical Program, L.L.C., the court finds that Defendants Lee and Jambon were not responsible for providing Plaintiff medical care while he was incarcerated at the JPCC.  Further, even if Defendants Lee and Jambon were so responsible, Plaintiff has utterly failed to show that either Sheriff Lee or Warden Jambon developed and maintained any policy or custom exhibiting deliberate indifference to the **medical needs** of prisoners at the JPCC, either through inadequate medical staffing at the JPCC, inadequate medical treatment of prisoners at the JPCC, inadequate training of deputies or correctional staff, or delay of inmates' access to medical care.

With regard to the specific allegations asserted in this case, the court accepts as true, Plaintiff's allegations that: he consulted with a nurse at the JPCC approximately **two hours** after the alleged incident;[12] the nurse gave him Motrin pills for pain and

---

[12]     In his Complaint, Plaintiff alleges that he slipped and fell at the prison on December 31, 2004 and he was taken to the Medical Center of New Orleans (Charity Hospital) five days later, on January 5, 2005.  Defendants argue that since the medical records show that Plaintiff  was seen at the Medical Center of New Orleans on January 25, 2005,  his accident must have occurred on January 21, 2005.  (Defendants' Memorandum in support of Second Motion for Summary Judgment, Doc. No. 45-2, n. 2).  For purposes of the motion practice before the court, the date of the alleged accident does <u>not</u> create a genuine issue of material fact, because it is not disputed that *on whatever date* Plaintiff had his accident, he was seen by the prison nurse approximately two hours after he slipped and fell, and he was seen at Medical Center of New Orleans approximately five days later.

advised him that she would inform the doctor; and **five days** after the alleged incident, Plaintiff taken to the Medical Center of New Orleans where he was diagnosed with a fractured collarbone.  (*See* Complaint at ¶¶19, 20 & 22).[13]

Plaintiff's medical records from the JPCC also support that Plaintiff was seen by a doctor, referred to Charity and was given medication for his alleged injury.  These records reflect the following "Physician Sick Call" notations on January 25, 2005: "R/O FX VS DISCOLORATION" and "TTP - 1/3 PROXIMAL, L CLAVIDE (*sic*) MININAL (*sic*) SWELLING, NO GROSS DEF.  ER".  (*See* Defendants' Ex. D-7, p. 4).  These same "Physician Sick Call[s]" also indicate that Plaintiff was referred to "CHNO ER" and he was prescribed "MOTRIN 800 MG 1 PO TID X 14D" AND "IBUPROFEN 800 MG PO TID 14 D".  (*Id.*).

The court finds that even construing the summary judgment evidence in the light most favorable to Plaintiff, no reasonable

---

[13]     Plaintiff's deposition testimony is not inconsistent with these allegations.  In his deposition, Plaintiff testified that "[i]t was ... longer than an hour" before he saw the nurse.  (Dep. at p. 32).  He further testified that the nurse told him at that time, the doctor was not there, and the nurse gave him what he thinks was "Motrin".  (*Id.* at 33-34).  Plaintiff testified that he saw a doctor 5 days later, and he also saw a nurse during those 5 days, when she was passing out his medication.  (*Id.* at 34).  The doctor told Plaintiff he had a broken clavicle, and Plaintiff was sent to Charity Hospital where he was x-rayed and given pain medication and a sling.  (*Id.* at 35-37).

Further, according to Plaintiff's deposition testimony, Plaintiff was to have follow-up care at Charity, but he never did because he was "shipped out" of the JPCC and sent to another correctional facility (Basille) the day after he was sentenced for the offense to which he pled guilty.  (*Id.* at 35-36).  (There is nothing in the record to show the date Plaintiff was sentenced or transferred out of the JPCC.  According to the records from the JPCC, Plaintiff was last scheduled for an appointment at Charity on September 7, 2005.).

Plaintiff also testified that he hurt his neck and right shoulder as a result of his alleged slip and fall.  (*Id.* at 37-38).  However,  this testimony in uncorroborated.

jury could conclude that either Defendant Lee or Warden Jambon was personally involved in the incidents made the basis of this lawsuit.   Further, because "respondeat superior or vicarious liability will not attach under §1983," neither Sheriff Lee nor Warden Jambon can be vicariously liable for the alleged actions of its jailers.  *Whitt*, 2008 WL 2122814 at *3, *quoting City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  And Plaintiff has not named as a Defendant any jail personnel who responded to Plaintiff's requests for medical assistance, investigated Plaintiff's alleged accident, escorted Plaintiff to see the nurse/doctor at the JPCC medical unit, transported Plaintiff to and from Charity Hospital, or in any other way, were involved with the circumstances of Plaintiff's alleged accident and related medical care.[14]

---

[14]     In opposition to Defendants' Third Motion for Summary Judgment, Plaintiff argues that:

> according to the records provided, **Mr. Bailey was not brought to see a nurse or doctor** nor received any pain medication for his fractured clavicle for a period of approximately eight (8) months even though he asserts he made numerous complaints to the Jefferson Parish Correctional staff of the pain he experienced. From the time he received medication on January 26, 2005 there is **no indication any further actions were taken by Defendant to bring him to see the nurse or doctor** for complaints of his shoulder pain until September 7, 2005.

(Plaintiffs' Opp., Doc. No. 65, p. 3, emphasis added).

The court finds this argument without merit because it is inconsistent and without support. As previously pointed out, Plaintiff admitted in his deposition that he was seen by a nurse at the JPCC approximately 1-2 hours after his accident, and approximately five days later he saw a doctor and was treated at Charity Hospital.  Further, while Plaintiff testified that he was supposed to receive "follow-up" at Charity, he was unable to do so because he was transferred to another correctional institution.  (*See* n. 13, *supra*).

Plaintiff also testified that immediately after his alleged accident, the correctional officer cooperated in trying to get him medical attention.  (*See* n. 16,  *infra*).  *Also see* Defendants' Exs. D-4 and D-5, Affidavits of Sheriff

The court also finds that a **two-hour delay** in seeing the jail nurse and a **five-day delay** in being treated at the hospital are "episodic act[s] or omission[s] of a state jail official" that did "not violate [Plaintiff's] constitutional right to be secure in his basic human needs, such as medical care and safety," because Plaintiff has failed to demonstrate that, in having Plaintiff seen by the jail nurse two hours after his accident and at the hospital five days later, any JPCC official or personnel acted or failed to act "with deliberate indifference to [his] needs." *Hare v. City of Cornith, MS*, 135 F.3d 320, 326 (5th Cir. 1998)(en banc)(citation omitted).[15]

Further, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in **substantial harm**." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)(emphasis added). Here, Plaintiff has also offered no competent summary judgment evidence that his two-hour delay in seeing the jail nurse and five-day delay in being treated at the hospital resulted in substantial harm. Thus, Plaintiff has failed to make a showing sufficient to establish the existence of

---

Deputies Killett and LeBlanc, who transported Plaintiff to and from Charity on January 25, 2005.

[15]    Under a deliberate indifference to medical needs claim, "[l]iability will not attach 'unless the official had **subjective knowledge** of a substantial risk of harm to a pretrial detainee but responded with deliberate indifference to that risk." *Whitt*, 2008 WL 2122814 at n.9, *quoting Hare*, 74 F.3d at 650 (emphasis added).

element essentials of his **deliberate indifference to medical needs claim.**

Plaintiff has also offered no evidence to show that either Sheriff Lee or Warden Jambon **improperly trained prison personnel** to respond to prisoners' requests for medical care or to provide the prisoners access to medical care. Indeed, Plaintiff's deposition testimony refutes that any correctional officer inadequately responded to his request for medical assistance following the alleged slip and fall.[16]

---

[16]    As reflected in the following testimony from Plaintiff's deposition, Plaintiff's complaints regarding the alleged delay in receiving medical care are directed to medical personnel at the prison and not the prison personnel who responded to his accident or brought him to the nurse:

Q.    [Two unidentified "guys' saw Plaintiff fall], and they called the officer. And they told the officer, and he picked me up out of the water and set me down. And that's when the officer said she was going to call nurse for emergency or whatever. ..and maybe about an hour or something, maybe two hours, then they came.

Q.    Who's they?

A.    A nurse and one of the lady officers...

. . .

Q.    Who was calling to get help [following the accident]?

A.    The officer.

Q.    So it was your understanding that you were trying to get the officer to call for medical, correct?

A.    Listen, I was in pain. So the other guys was helping. They was telling the officer. Look, man, get somebody down here.

Q.    And you heard them saying that?

A.    Sure, yeah.

Q.    And the officer, he was trying to cooperate with those guys?

Thus, Defendants Lee and Jambon are entitled to summary judgment dismissal of any remaining §1983 claims asserted against them.

### _(2)  Plaintiff's state law claims against Defendants Lee and Jambon_

As to Plaintiff's state-law claim for negligence/gross negligence against Defendants Lee and Jambon **based on the allegedly slippery shower area where Plaintiff fell**, the court finds that

---

A.      He was cooperating.  He kept calling to - on the second floor to medical.

. . .

Q.      The two guys who helped you off the floor -

A.      Yes, sir.

Q.      - were trying to get the correctional officer to get the medical to come see you?

A.      Yes,  sir.

Q.      And as far as you know, the guy in fact was listening to the two guys and he was attempting to get medical, buy you don't know why it took medical so long to get there?

A.      ... medical always took long.

. . .

Q.      During your wait you were able to observe the correctional officer trying to call and get the medical to call and get the medical to come see you?

A.      Yeah.

(Plaintiff's Dep. at 29-32).

there are genuine issues of material fact.[17]   However, **as to any
other state-law claim for negligence/gross negligence**, Plaintiff
has failed to show any genuine issue of material fact.

## (B)  Plaintiff's claims against the Parish of Jefferson and Nurse Jane Doe revisited

The court need not reach the issue of which party to the
**Agreement** (between the Parish of Jefferson and the Jefferson
Community Correctional Center Medical Program, L.L.C.) would be
liable under a §1983 claim for deliberate indifference to medical
needs, because Plaintiff has made absolutely no showing that either

---

[17]     In his deposition, Plaintiff testified that there was a problem with the plumbing/leaking water at JPCC, and  maintenance people periodically (but not frequently) came to make repairs.  "[T]hey  supposedly would fix it, and it would run over after they leave.  And it wouldn't stop, it just leak (*sic*), until they found out they had to go behind it, I think, and do some type of work to fix it."  (Plaintiff's Dep. at 22-25).

As the court previously noted (n. 11), Defendants submitted the Affidavit of Louis Ancar, and his attached investigation report, in support of their motions for summary judgment.  (*See* Ex. D-6, Doc. No. 49-2).  However, while this Affidavit is signed and dated, it is not notarized.  The court notes that in his January 26, 2005, investigation report of Plaintiff's alleged slip and fall, Deputy Ancar wrote that the incident occurred on January 21, 2005, and he further wrote:

> Inmate Bailey stated that the floor to the restroom area was wet due to the fact that toilet had been overflowing.  Inmate Bailey stated that he slipped prior to entering the shower area....

> A quick survey of the shower area confirmed that the shower area does accumulate standing water in certain spots.  In addition, the face bowl appeared to either be clogged or slow draining.

> On January 25, 2005, I submitted a maintenance request ... to Sergeant Fray in reference to the shower area.....

(*Id.*, attached report).

of these parties had any policy or custom of providing inadequate medical care to prisoners at the JPCC, or any policy or custom of inadequate medical staffing for the JPCC.[18]  Thus, any §1983 claim asserted herein by Plaintiff against the **Parish of Jefferson** will be dismissed.

Further, there can be no finding of individual liability of **Nurse Jane Doe** under §1983, because Plaintiff has failed to identify Nurse Jane Doe, and any attempt by Plaintiff to substitute Nurse Jane Doe with a named Defendant would not only be past the deadline to amend, but it would also not relate back under Federal Rule of Civil Procedure 15(c).  *Whitt v. Stephens County*, __F.3d__, 2008 WL 2122814 (5th Cir. May 21, 2008).[19]

Finally, pursuant to the **Agreement** between the Parish of Jefferson and the Jefferson Community Correctional Center Medical Program, L.L.C., the employees of the Jefferson Community Correctional Center Medical Program, L.L.C. are not considered

---

[18]     The court also does not reach the issue of whether the Parish of Jefferson is a legal entity that can sue or be sued.

[19]     Rule 15(c) requires a "mistake concerning the identity of the proper party" and the use of a John Doe monkier does not constitute a "mistake".  *Whitt*, 2008 WL 2122814 at *3, *citing and quoting Jacobsen v. Osborne*, 133 F.3d 315, 320-21 (5th Cir. 1998).

As explained by the *Whitt* Court, the limitations period for a § 1983 action is determined by the state's personal injury limitations period.  The alleged incident in this case occurred on or about  December 31, 2004 (or as Defendants argue on or about January 21, 2005), and Louisiana's has a one year time bar on personal injury claims.  Thus, Plaintiff's claims against a nurse named in Nurse Jane Doe's place are time-barred.

employees or statutory employees of the Parish of Jefferson.[20] Thus, there can be no finding that the Parish of Jefferson can be liable to Plaintiff under a theory of respondeat superior for the alleged state-law negligence of medical personnel at the JPCC.

### III.  Conclusion

For the reasons set forth above,

**IT IS ORDERED** that the **"Third Motion for Summary Judgment"** filed by Defendants, Harry Lee and Glen Jambon, be and is hereby **GRANTED**, dismissing all of Plaintiff's remaining §1983 claims against these Defendants with prejudice, and dismissing all of Plaintiff's state-law claims for negligence and gross negligence asserted against Defendants, Harry Lee and Glen Jambon, ***except for Plaintiff's state-law claims for negligence (based on the alleged slippery condition of the shower area where Plaintiff allegedly fell)***;

**IT IS FURTHER ORDERED** that *all* of Plaintiff's §1983 claims <u>and</u> *all* of Plaintiff's state-law negligence and gross negligence claims against Defendant, the Parish of Jefferson, be and are hereby **DISMISSED** with prejudice;

**IT IS FURTHER ORDERED** that Plaintiff's claims for declaratory and injunctive relief are **DENIED**; and

---

[20]     *See* discussion of Agreement, pp. 5-6, *supra*.

**IT IS FURTHER ORDERED** the **only remaining claims**, i.e., Plaintiff's **state-law claims for negligence** *(based on the alleged slippery condition of the shower area where Plaintiff allegedly fell)* asserted against **Defendants, Harry Lee and Glen Jambon**, be and are hereby **DISMISSED** for lack of subject matter jurisdiction. The court declines to exercise supplemental jurisdiction over these claims, which are dismissed without prejudice to the refiling of such claims in state court.

New Orleans, Louisiana, this **12th** day of **June**, **2008**.

_____
A.J. McNAMARA
UNITED STATES DISTRICT JUDGE